United States Court of Appeals

For the Eighth Circuit

_____

No. 23-1093
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Howard Amundson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: September 19, 2023
Filed: October 6, 2023
[Unpublished]
_____

Before SMITH, Chief Judge, ARNOLD and ERICKSON, Circuit Judges.
_____

PER CURIAM.

Anthony Amundson pleaded guilty to conspiring to distribute 500 grams or
more of a mixture or substance containing a detectable amount of methamphetamine
and 50 grams of actual (pure) methamphetamine. *See* 21 U.S.C. §§ 841(b)(1)(A), 846.

The district court[1] calculated his recommended sentencing range under the Sentencing Guidelines as 360 months to life in prison, and the court sentenced him to 348 months. Amundson maintains that the court clearly erred in estimating the amount of drugs Amundson was responsible for and so miscalculated the Guidelines range. We affirm.

The Guidelines provide that a defendant who stands convicted of the offense Amundson committed will receive a base offense level of 36 if he is found responsible for between 15–45 kilograms of a mixture containing methamphetamine. *See* USSG § 2D1.1(c)(2). But if the defendant is found responsible for only 5–15 kilograms of a methamphetamine mixture, then his base offense level is 34. *See id.* § 2D1.1(c)(3).

Amundson's presentence report recommended that the court find him responsible for 25.89 kilograms, which would place him in the higher of the two categories mentioned. To reach that precise figure, the PSR recounted controlled buys and statements from co-conspirators regarding the quantity of drugs Amundson transacted. The government, meanwhile, advocated for a slightly different precise figure of 32.07 kilograms, also in the higher category. Amundson disagreed with the calculations.

At sentencing the government called Amundson's ex-girlfriend to testify about the amount of drugs she and Amundson sold. The district court found her testimony credible, and based on her testimony, it believed Amundson was responsible for at least 15 kilograms of a methamphetamine mixture, which is enough to put him in the higher category.

---

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

"We review a district court's drug-quantity finding for clear error and reverse only when the entire record definitely and firmly illustrates that the lower court made a mistake." *United States v. McArthur*, 11 F.4th 655, 659 (8th Cir. 2021) (per curiam). Courts must often "determine drug quantity using imprecise evidence," but we will uphold their findings "so long as the record reflects a basis for the court's decision." *See United States v. Walker*, 688 F.3d 416, 423 (8th Cir. 2012).

Amundson maintains that the district court clearly erred when it placed him in the higher of the two categories by finding him responsible for at least 15 kilograms of a methamphetamine mixture. He contends that he belongs in the lower category, as the evidence showed him responsible for only 5–15 kilograms. He points out that the indictment charged that the conspiracy ran for about a year and a half, and except for a nearly four-month stint around the third quarter of that period, he was in state custody. He says that he should not be held responsible for drugs sold while he was incarcerated or by others, namely his ex-girlfriend, who sold them "outside the scope of his involvement."

Even if we disregarded the quantities allegedly attributable to Amundson sold while he was in state custody, his ex-girlfriend's credible testimony supports the district court's finding. She testified that, throughout Amundson's brief stint out of custody, the pair was receiving two kilograms a couple times a week to distribute. Given that Amundson was out of jail for almost four months, it was not clear error to conclude that he was responsible for at least fifteen kilograms during this time alone, as that's probably about what he helped distribute in just a single month. "It is well-established that the testimony of co-conspirators may be sufficiently reliable evidence upon which the court may base its drug quantity calculation for sentencing

purposes." *See United States v. Plancarte-Vazquez*, 450 F.3d 848, 852 (8th Cir. 2006). We are certainly not left with a definite and firm conviction that the district court made a mistake. *See McArthur*, 11 F.4th at 659.

Affirmed.

_____